**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4733-16T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

S.B.,

 Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF S.M.B.,
a Minor.

_____

 Submitted September 21, 2018 – Decided October 25, 2018

 Before Judges O'Connor and DeAlmeida.

 On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0113-17.

 Joseph E. Krakora, Public Defender, attorney for appellant (Stephania Saienni-Albert, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Erika C. Callejas, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Lisa M. Black, Designated Counsel, on the brief).

PER CURIAM

Defendant S.B. (mother) appeals from a Family Part judgment terminating her parental rights to her daughter, S.M.B. (Sarah), presently three years of age.[1] The identity of Sarah's biological father is not known.

The mother contends the Division of Child Protection and Permanency (Division) failed to prove by clear and convincing evidence the four-prong standard set forth in N.J.S.A. 30:4C-15.1(a).[2] After reviewing the record and

---

[1] We employ initials to protect the mother's and the child's privacy, and use a pseudonym to refer to the child for ease of reference.

[2] These four prongs are:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

2

the applicable legal principles, we reject the arguments she advances and affirm substantially for the reasons expressed by Judge Wayne J. Forrest in his comprehensive written opinion. In lieu of reciting at length the evidence presented by the Division in support of terminating the mother's parental rights, we incorporate by reference Judge Forrest's factual findings because they are supported by competent evidence presented at trial.[3] N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). We highlight some of the key evidence.

Sarah was born in July 2015. While she and the mother were still in the hospital following her birth, the hospital staff noted the mother did not have "full cognitive capacity to care for an infant," and contacted the Division. The Division immediately effectuated an emergency removal of the child and

_____

> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

[3] The mother neither attended nor introduced any evidence at trial.

placed her in a resource home. Shortly thereafter, the Division obtained temporary custody of Sarah, who has never been in her mother's custody.

During the guardianship trial, a Division caseworker testified to the following. Although she submitted to various evaluations and completed parenting classes, the mother did not submit to a substance abuse assessment or participate in psychological therapy, as had been recommended by one of the evaluators. The mother was appropriate when she visited the child, yet for many months failed to see the child at all. The mother was not able to secure housing or employment and depended upon her own mother for financial support. However, her own mother was herself unable to maintain stable housing for any appreciable length of time. All of the relatives the mother suggested as potential caregivers were ruled out and none appealed the Division's rule-out determination. Finally, the caseworker noted Sarah was doing well in the home of her resource mother, who wanted to adopt the child.

The Division called psychologist Mark Singer, Ed. D., as its expert witness. Dr. Singer conducted a psychological evaluation of the mother, as well as a bonding evaluation of the child with both the mother and resource mother. Dr. Singer noted documents he reviewed about the mother's background indicated she had significant cognitive deficits in the frontal lobe,

4

which control decision-making, long-term planning, and logical thinking. The objective tests he performed and his clinical evaluation were consistent with the background information provided in the documents.

While there is no indication the mother would deliberately harm a child, Singer found she did not have the emotional or cognitive resources to create stability in her life and thus could not do the same for Sarah. Because of her poor psychological functioning, she was "not a viable parenting option" for the child and not likely to become one. Her frontal lobe deficit was "not subject to . . . remediation" and thus was "not likely to change over time."

As for the bonding evaluation between the mother and child, Singer did find the mother conducted herself appropriately and the child appeared comfortable in her presence. However, the child did not view the mother as a significant parental figure. By contrast, when with the resource mother, the child exhibited behavior revealing she was far more attached to the latter, who Singer found was her psychological parent.

Singer opined that, if removed from the resource mother's care, there is a significant risk the child will suffer "feelings of loss, low self-esteem, [and] insecurity" and will have "difficulty forming meaningful attachments later in life," and the mother will not be able to mitigate the harm the child would

5

endure. Given the child's attachments to the resource mother, Singer found the child will not likely have a significant or enduring reaction to the termination of the mother's parental rights. In fact, he was of the opinion the termination of the mother's parental rights and the child's adoption by the resource mother was the "only viable option" for the child.

Following the trial, the judge issued a thorough, forty-page opinion in which he addressed the four factors in N.J.S.A. 30:4C-15.1(a), setting forth his findings of fact and conclusions of law as to each. The mother contends there is insufficient evidence to support the judge's findings and conclusions that the Division met all four prongs in this statute by clear and convincing evidence.

In reviewing a case in which the termination of parental rights has been ordered, we remain mindful of the gravity and importance of our review. See N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 151 (2010) ("[T]he process for terminating parental rights is a difficult and intentionally rigorous one that must be satisfied by a heightened burden of proof . . . ."). Parents have a constitutionally protected right to enjoy a relationship with their children and to raise them without State interference. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008).

6

However, this right is not absolute, as it is limited by the "State's <u>parens patriae</u> responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." <u>F.M.</u>, 211 N.J. at 447. The State has a strong public policy that favors placing children in a permanent, safe, and stable home. <u>See</u> <u>generally</u> <u>In re Guardianship of K.H.O.</u>, 161 N.J. 337, 357-58 (1999).

In addition, a reviewing court should not disturb the factual findings of the trial court if they are supported by "adequate, substantial and credible evidence. . . ." <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 279 (2007) (quoting <u>In re Guardianship of J.T.</u>, 269 N.J. Super. 172, 188 (App. Div. 1993)). We defer to the trial court's credibility findings and, in particular, its fact findings because of its expertise in family matters, <u>see</u> <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 N.J. 328, 342-43 (2010), unless the trial court's findings are "so wide of the mark that the judge was clearly mistaken." <u>N.J. Div. of Youth & Family Servs. v. G.L.</u>, 191 N.J. 596, 605 (2007) (citing <u>J.T.</u>, 269 N.J. Super. at 188-89).

We note that providing proof a parent has in fact harmed a child is not essential to showing the first prong of N.J.S.A. 30:4C-15.1(a) has been

7

satisfied. <u>N.J. Div. of Youth & Family Servs. v. A.W.</u>, 103 N.J. 591, 604-05, (1986). When no actual harm is proven, the first prong will be satisfied by evidence showing a parent will endanger the child's health, safety, or welfare. <u>See</u> <u>In re Guardianship of D.M.H.</u>, 161 N.J. 365 (1999). A court does not have to wait until a child is "irreparably impaired by parental inattention or neglect" before it acts. <u>Id.</u> (quoting <u>A.W.</u>, 103 N.J. at 616 n.14).

We have examined the mother's arguments the Division failed to satisfy the four prongs of N.J.S.A. 30:4C-15.1(a). After perusing the record, we conclude these arguments are without sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>Rule</u> 2:11-3(e)(1)(E). Judge Forrest's thorough opinion analyzes these prongs, and his findings are amply supported by substantial and credible evidence, mandating our deference. <u>N.J. Div. of Youth & Family Servs. v. F.J.</u>, 211 N.J. 420, 448-49 (2012); <u>Cesare v. Cesare</u>, 154 N.J. 394, 413 (1998).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4733-16T2